1

2

3

4

5

6                            UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
7                                   AT SEATTLE

8    TANYA G. BEVERLY,

9                          Plaintiff,                Case No. C12-811-JLR-BAT

10                  v.                               **REPORT AND**
                                                     **RECOMMENDATION**
11   CAROLYN W. COLVIN, Acting Commissioner
     of Social Security,[1]
12
                           Defendant.
13

14         Tanya G. Beverly seeks review of the denial of her Supplemental Security Income and

15   Disability Insurance Benefits applications.  She contends that the ALJ erred by (1) failing to

16   adequately develop the record; (2) failing to account for Ms. Beverly's knee arthritis and

17   effusion and obesity at step two and when assessing her residual functional capacity ("RFC"); (3)

18   failing to properly assess the medical evidence; and (4) failing to properly evaluate the opinion

19   of consultative examiner Richard Coder, Ph.D.  Dkt. 15 at 2-3.[2]  As discussed below, the Court

20   ───────────────

21   [1]  On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social
     Security.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is
     substituted for Commissioner Michael J. Astrue as the Defendant in this suit.
22   [2]  Ms. Beverly lists two other assignments of error that do not merit a full discussion.  First, Ms.
     Beverly alleges that the ALJ considered only "objective" medical evidence when evaluating her
23   mental impairments, and should have considered other evidence.  The written decision confirms
     that the ALJ considered all relevant evidence; his reference to a lack of "objective" medical

1  recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings

2  pursuant to sentence four.

3  ### FACTUAL AND PROCEDURAL HISTORY

4  Ms. Beverly is currently 54 years old, has a high school degree and completed two years

5  of college, and has worked as a phlebotomist, office clerk, hazmat technician, school bus driver,

6  sales associate, and veterinarian assistant.[3]  On September 16, 2008, she applied for benefits,

7  alleging disability as of June 28, 2006.  Tr. 123-32.  Her applications were denied initially and on

8  reconsideration.  Tr. 59-65, 68-71.  The ALJ conducted a hearing on June 9, 2010 (Tr. 31-54),

9  finding Ms. Beverly not disabled.  Tr. 17-26.  As the Appeals Council denied Ms. Beverly's

10  request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-6.

11  ### THE ALJ'S DECISION

12  Utilizing the five-step disability evaluation process,[4] the ALJ made the following
findings:

13

14  **Step one:**  Ms. Beverly had not engaged in substantial gainful activity June 28, 2006.

15  **Step two:**  Ms. Beverly's major depressive disorder (recurrent without psychotic
features) and borderline personality disorder are severe impairments.

16  **Step three:**  These impairments did not meet or equal the requirements of a listed
impairment.[5]

17

18  **RFC:**  Ms. Beverly can perform a full range of work at all exertional levels, with the

19  evidence is consistent with his conclusion that Ms. Beverly's self-reported symptoms are not
credible.  Tr. 23.  Ms. Beverly does not identify an error here with any specificity, and the Court

20  will not further analyze this issue.  *See generally Carmickle v. Commissioner*, 533 F.3d 1155,
1161 n.2 (9th Cir. 2008) (declining to address issues not argued with any specificity).

21  Second, Ms. Beverly's final assignment of error is a catch-all argument that the ALJ's
decision is not supported by substantial evidence.  She provides no new argument in this section,

22  but instead reiterates arguments made in previous sections.  Thus, the Court will not separately
address this assignment of error.

23  [3] Tr. 35, 123, 149, 168.
[4] 20 C.F.R. §§ 404.1520, 416.920.
[5] 20 C.F.R. Part 404, Subpart P, Appendix 1.

following nonexertional limitations: Ms. Beverly can have limited contact with others (i.e., perform work that does not involve interdependent tasks); she can perform simple repetitive tasks; and she can work in a predictable work environment.

**Step four:**  Ms. Beverly could perform her past work as a packer.  This work does not require the performance of work-related activities precluded by her RFC.

**Step five:**  In the alternative, Ms. Beverly can transition to other work, such as shellfish shucker, injection molding machine tender, and grain picker.  Because Ms. Beverly can perform jobs that exist in significant numbers, she is not disabled.

Tr. 14-26.

# DISCUSSION

**1.     The ALJ Did Not Breach His Duty to Develop the Record.**

Ms. Beverly was not represented at the administrative hearing, and contends that in light of that circumstance, the ALJ should have provided a more expansive opportunity for her to identify her impairments and explain how they prevent her from working.  Early in the administrative hearing, the ALJ asked Ms. Beverly why she could no longer work as a phlebotomist, and she responded with a description of her mental impairments.  Tr. 36.  Later on, the ALJ provided her with an opportunity to address any issue that had not yet been covered:

> [ALJ]:  Is there anything that I haven't asked you or that we haven't touched on which reflects on your capacity to work?
>
> [Ms. Beverly]:  I have no idea?
>
> [ALJ]: Well, if you think of anything, you can write me a letter and let me know if there is something you've missed.  In addition, when I get the additional evidence to bring your record up to date, we will be sending you copies of that material so you can make any comments that you want.  So, if you've thought of anything in the interim, you can include that[.]

Tr. 46.  According to Ms. Beverly, her unfamiliarity with the process and her failure to mention any physical impairments during the administrative hearing should have triggered the ALJ's duty to inquire about any physical impairments.  Dkt. 17 at 2-3.

The parties agree that an ALJ has a heightened duty to develop the record if a claimant is

1   unrepresented.  *See* Dkt. 15 at 3 (citing *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003));

2   Dkt. 16 at 12 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).  But the parties

3   disagree as to whether the ALJ met that duty in this case.  The Commissioner points to all the

4   forms Ms. Beverly completed in the process of applying for disability benefits, which provided

5   her an opportunity to specify her disabling physical impairments she now contends were ignored

6   by the ALJ.  *See, e.g.*, Tr. 148 (not listing physical impairments in response to "What are the

7   illnesses, injuries, or conditions that limit your ability to work?" in a disability report), 205 (the

8   same, in the disability appeal report).  That she failed to identify physical impairments in her

9   forms suggests that she may not have identified them upon further questioning during the

10  hearing, because she did not apparently connect any physical limitations with her disability

11  allegations.

12          And in any event, the ALJ considered the medical evidence related to Ms. Beverly's knee

13  impairments in his step-two findings (Tr. 20); the sufficiency of those findings will be discussed

14  in the following section.  Because the ALJ demonstrated an awareness of the full, unambiguous

15  record in Ms. Beverly's case and did not suggest that the evidence was insufficient, and because

16  Ms. Beverly did not provide any indication that her physical impairments were disabling at any

17  point during the proceeding until this appeal, the ALJ's duty to inquire was not triggered.  *See*

18  *Tonapetyan*, 242 F.3d at 1150 ("Ambiguous evidence, or the ALJ's own finding that the record

19  is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct

20  an appropriate inquiry.'" (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996))).

21  **2.      The ALJ Did Not Err With Respect to Ms. Beverly's Knee Impairments or Obesity.**

22           Ms. Beverly contends that the ALJ should have found her knee impairments and her

23  obesity to be severe at step two, and/or to account for limitations caused by those impairments in

REPORT AND RECOMMENDATION - 4

the RFC assessment.  Though Ms. Beverly implicitly admits that the medical evidence related to her knee impairment and obesity do not establish that these impairments were severe, Ms. Beverly cites references in the record to her self-reported difficulty standing and walking, and thus the ALJ should have inquired as to whether Ms. Beverly had physical impairments that caused those difficulties.  Dkt. 17 at 4.

For the reasons explained in the previous section, the ALJ did not breach his duty to inquire in this case.  The ALJ noted that Ms. Beverly had been diagnosed with arthritis in her left knee, and also cited 2009 imaging evidence after a fall showing "no acute osseous abnormalities and a left knee effusion with no significant degenerative changes."  Tr. 20 (citing Tr. 900).  There is no medical evidence establishing that Ms. Beverly's arthritis or knee effusion caused a significant limitation on her ability to work, and thus the ALJ did not err in finding that her knee impairment was not severe.[6]

Ms. Beverly's argument is even more tenuous as to obesity.  Though there is no dispute that, as noted by the ALJ (Tr. 19), Ms. Beverly is obese, there is no evidence or suggestion in the record that her obesity led to any functional limitations.  Though Ms. Beverly suggests that the ALJ should have essentially assumed that the difficulties she alleged with walking and standing were caused by her obesity, no evidence in the record supports that logical leap.  Especially in light of Ms. Beverly's hearing testimony regarding her ability to garden for 30-40 hours per week (Tr. 45-46), and given the lack of specificity with which Ms. Beverly described her

---

[6] Ms. Beverly argues that the ALJ employed the wrong standard for determining whether an impairment is severe (Dkt. 15 at 5-6), but as noted by the Commissioner, the Social Security regulations use the same language to reference a severe impairment.  *Compare, e.g.*, 20 C.F.R. § 404.1520(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.") *with* Tr. 19-20.  Thus, Ms. Beverly has failed to establish that the ALJ applied an incorrect standard.

REPORT AND RECOMMENDATION - 5

1    difficulties standing and walking, she has not shown that the ALJ's interpretation of the evidence

2    was unreasonable.

3    **3.      The ALJ Erred in Evaluating "Other" Source Medical Evidence.**

4            Three of Ms. Beverly's treating providers were not "acceptable medical sources": case

5    manager Owen Riley, B.A.; James Nielson, MC/MSW; and Sheila Johansen, ARNP.  These

6    "other" sources treated Ms. Beverly at Sound Mental Health, where Ms. Beverly received

7    counseling services, medication services, chemical dependency treatment, and case management

8    for a number of years, until transferring to a therapy program at Harborview in 2010.  *See, e.g.,*

9    Tr. 236-259 (functional evaluations completed by Sound Mental Health providers, indicating she

10   has received treatment there since at least 2000), 260-263 (mental status examination notes and

11   functional evaluation completed by a Sound Mental Health provider), 293-377 (Sound Mental

12   Health treatment notes), 1004-96 (Sound Mental Health treatment notes).  These providers

13   completed some functional evaluation forms, but the record also contains their treatment notes

14   from 2005-2010.  Because they are "other" sources, the ALJ was required to provide germane

15   reasons to discount their opinions.  *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217,

16   1224 (9th Cir. 2010).

17          The ALJ assigned "little weight" to all of the functional evaluations completed by the

18   Sound Mental Health providers, largely because he found the functional evaluations were based

19   primarily on Ms. Beverly's non-credible self-report.  Tr. 24.  The ALJ also found that because

20   Mr. Riley and Mr. Nielson completed evaluation forms in order to assist her in receiving state

21   assistance, Ms. Beverly had an incentive to exaggerate her description of symptoms and

22   complaints to them.  Tr. 24.  The ALJ also found that the opinions of Mr. Riley and Mr. Nielson

23   were entitled to less weight than the state agency medical consultant because they were "other"

1   sources, not "acceptable medical sources."   *Id.*

2          None of these reasons is legitimate under the circumstances of this case.  First, "other"

3   sources are not to be discounted merely because of their status as "other" sources; the opinions of

4   "other" medical sources can be afforded more weight than an acceptable medical source if the

5   "other" source has seen the claimant more often and provides better support and explanation for

6   his or her opinion.  *See, e.g.*, Social Security Ruling ("SSR") 06-3p, 2006 WL 2329939, at *5

7   (Aug. 9, 2006).

8          Second, Ms. Beverly's complaints recorded in the Sound Mental Health evaluations are

9   consistent with her complaints made during the course of her treatment; the ALJ incorrectly

10  assumed that she exaggerated her complaints at the time of evaluation in order to receive benefits

11  because she knew that the evaluations would be used in consideration of her disability

12  application.  *See, e.g.*, Tr. 1042-44 (Ms. Beverly describing stress due to social situations, with

13  clinical notes regarding counseling needed for handling stress), 1047 (describing a 12-day

14  hospitalization for depression and suicidal ideation), 1064 (Ms. Beverly describing social

15  isolation and suicidal ideation after a four-day relapse, which was triggered by depression),

16  1092-93 (clinical notes regarding Ms. Beverly's previous five hospitalizations due to depression,

17  and noting her lack of social support).

18         The ALJ also incorrectly assumed that the Sound Mental Health evaluations were based

19  primarily on Ms. Beverly's self-report.  This is not the common situation where a one-time

20  evaluator fills out an evaluation form based on whatever the claimant reports and has no other

21  information to support his or her opinions; the Sound Mental Health providers had seen Ms.

22  Beverly regularly over a number of years, and that relationship and treatment history informed

23  their opinions.  They observed how she handled stressful situations such as moving (Tr. 1042,

1062) and conflict with family members and friends (Tr. 332, 1034, 1036); the severity of her

depression and suicidal ideation (Tr. 372, 1047, 1064); responses to medication (Tr. 1069); and

her lack of insight regarding her drug and alcohol use and depression (Tr. 261, 299, 330, 333).

Over the years, they also observed how Ms. Beverly is "plagued by illogical assumptions about

herself and her family," and how her paranoia affects her judgment.  Tr. 261.  The Sound Mental

Health treatment records also include notes on a number of mental status exams, documenting a

clinician's observations of, *inter alia*, Ms. Beverly's attitude, thought process, and affect.  *See*

Tr. 1022-93.

Moreover, the clinicians themselves did not indicate that they found Ms. Beverly's self-

report to lack credibility.  *See Ryan v. Comm'r of Social Sec. Admin.*, 528 F.3d 1194, 1199 (9th

Cir. 2008) (rejecting an ALJ's discounting a medical opinion "by questioning the credibility of

the patient's complaints where the doctor does not discredit those complaints and supports his

ultimate opinion with his own observations").  Instead, the Sound Mental Health practitioners'

extensive treatment notes explain the context for their evaluations and record their own clinical

observations, and thus the ALJ mischaracterized the record when he found that their evaluations

were based primarily on Ms. Beverly's non-credible self-report.

Because none of the ALJ's reasons for discounting the opinions of the Sound Mental

Health practitioners were accurate or germane, this case must be remanded for reconsideration of

those opinions.

**4.    The ALJ Erred in Evaluating Dr. Coder's Opinion.**

The ALJ provided only "partial weight" to the opinion of Richard Coder Jr., Ph.D., on the

grounds that Dr. Coder's severe limitations were inconsistent with Ms. Beverly's self-reported

daily activities.  Tr. 23-24.  Specifically, the ALJ pointed to Ms. Beverly's gardening, reading,

computer use, and meal preparation as inconsistent with Dr. Coder's opinion that Ms. Beverly is severely impaired in her ability to complete a normal workday/workweek without interruptions at a constant pace, and in her ability to deal with various changes in the work setting.  Tr. 24.

The Commissioner argues that the ALJ's interpretation of the evidence is reasonable, particularly because Dr. Coder was not aware of the extent of Ms. Beverly's activities when he rendered his opinion.  Dkt. 16 at 11-12.  The Commissioner emphasizes that Ms. Beverly's "habit of spending thirty to forty hours per week working in vegetable gardens with a friend she had known since high school[] was not known to Dr. Coder and, more importantly, was inconsistent with the limitations he opined."  Dkt. 16 at 11-12.

The record shows that Ms. Beverly first reported spending time gardening to a clinician at Sound Mental Health in June 2009, and mentioned it again in September 2009.  Tr. 1034, 1036.  At the June 2010 administrative hearing, Ms. Beverly described the amount of time she spent gardening "until about three weeks ago," but did not state when she began gardening.  Tr. 45-46.  Dr. Coder evaluated Ms. Beverly in November 2008, and there is no evidence that she was gardening at that time.  Thus, there is no basis in the record to conclude that Ms. Beverly concealed her gardening from Dr. Coder; it appears that she may not have started gardening at the time of Dr. Coder's evaluation, and it is unclear why subsequent behavior would undermine an earlier evaluation, especially in light of the lack of stability in Ms. Beverly's mental health during this time period.

Furthermore, Ms. Beverly's ability to prepare meals, use the computer, and read do not have any bearing on her ability to keep a normal work schedule with interruptions at a constant pace, or to deal with workplace change.[7]  Thus, the reasons provided by the ALJ for discounting

---

[7] The Court does note, however, that the ALJ accounted to some degree for Dr. Coder's opinion

1   Dr. Coder's are not legitimate nor supported by substantial evidence.  *See Lester v. Chater*, 71

2   F.3d 821, 830-31 (9th Cir. 1995) ("[T]he opinion of an examining doctor, even if contradicted by

3   another doctor, can only be rejected for specific and legitimate reasons that are supported by

4   substantial evidence in the record.")  On remand, the ALJ shall reconsider Dr. Coder's opinion.

5                                                                  **CONCLUSION**

6          For the foregoing reasons, the Court recommends that the Commissioner's decision be

7   **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to

8   sentence four.  On remand, the ALJ should reconsider the opinions of Sound Mental Health

9   employees Owen Riley, James Nielson, and Sheila Johansen, and the opinion of Dr. Coder.

10         A proposed order accompanies this Report and Recommendation.  Objections, if any, to

11  this Report and Recommendation must be filed and served no later than **April 10, 2013.**  If no

12  objections are filed, the matter will be ready for the Court's consideration on **April 12, 2013**.  If

13  objections are filed, any response is due within 14 days after being served with the objections.  A

14  party filing an objection must note the matter for the Court's consideration 14 days from the date

15  the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The

16  failure to timely object may affect the right to appeal.

17         DATED this 27th day of March, 2013.

18

19                                                                  _____

20                                                                  BRIAN A. TSUCHIDA
                                                                    United States Magistrate Judge

21

22

23  that Ms. Beverly was impaired in her ability to handle workplace change, by limiting her to a
    "predictable work environment" in his RFC assessment.  Tr. 21.

REPORT AND RECOMMENDATION - 10